## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

BARRYEL C. PALMER,    *
                      *
    Plaintiff,    *
                      *
vs.                   *    CIVIL ACTION 09-00346-WS-B
                      *
MICHAEL J. ASTRUE,    *
Commissioner of       *
Social Security,      *
                      *
    Defendant.    *

## REPORT AND RECOMMENDATION

Plaintiff Barryel C. Palmer ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. Oral argument was waived. Upon careful consideration of the administrative record, and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

## I. Procedural History

Plaintiff protectively filed applications for disability income benefits and supplemental security income benefits on May 16, 2006. In his applications, Plaintiff alleges disability since April 26, 2006 due to "hand problems." (Tr. 77-86, 97, 102). Plaintiff's applications were denied initially, and he timely filed a Request for Hearing. (Tr.43-58, 60). On October 23, 2007, Administrative

Law Judge Charles L. Brower (hereinafter "ALJ Brower" or "ALJ") held an administrative hearing, which was attended by Plaintiff, his representative and a vocational expert (hereinafter "VE"). (Tr. 58-78). In a decision dated December 17, 2008, ALJ Brower found that Plaintiff is not disabled. (Tr. 5-16). Plaintiff's request for review was denied by the Appeals Council (hereinafter "AC") on April 28, 2009. (Tr. 1-4).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

A.    Whether the ALJ erred by rejecting the opinion of William Standeffer, Jr., M.D., Plaintiff's treating physician.

B.    Whether the ALJ erred in evaluating Plaintiff's credibility.

C.    Whether the record before this court is incomplete.

## III. Factual Background

Plaintiff was born on April 5, 1968, and was 39 years old at the time of the administrative hearing. (Tr. 30, 77, 80). Plaintiff has a high school education and attended truck driving school and a mechanic vocational center. (Tr. 30, 107). He has past relevant work ("PRW") as a bricklayer. (Tr. 31, 129).

At the administrative hearing, Plaintiff testified that he was involved in an automobile accident on April 26, 2006, when a log truck lost control and slid into him. (Tr. 26-27). Plaintiff testified that he broke his right wrist and his left hand, and that

he can barely curl the fingers on his left hand without pain. (Tr. 25, 27). Plaintiff further testified that he is no longer able to work as a bricklayer due to the injuries to his hand. (Tr. 31-32). According to Plaintiff, he cannot work with his right hand because the Lortab he takes for pain makes him drowsy. (Tr. 33-34, 36). Plaintiff also testified that he cannot work in cold places because the cold aggravates the screws in his hand, that he has to wear a glove when in cold environments, and that he wears a brace on this left hand on a daily basis. (Tr. 36, 39).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial

---

[1]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.  Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[2]

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their

In case <u>sub judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for disability insurance benefits through March 31, 2009. (Tr. 9). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. <u>Id.</u> The ALJ also concluded that while Plaintiff has the severe impairments of residual effects of metacarpal (hereinafter "MC") fractures of the third and fourth digits of the left hand and proximal phalanx[3] of left index finger - status post open reduction and internal fixation (hereinafter "ORIF"), they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 9, 11). The ALJ determined that Plaintiff's allegations regarding his limitations were not totally credible. (Tr. 13).

---

past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id.</u> at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[3]Phalanx is any one of the bones in the fingers or toes. <u>See</u> <u>www.medterms.com.</u> (Last visited Dec. 13, 2010).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") for a reduced range of light work, that Plaintiff can stand, walk and sit without limitation, and that Plaintiff can lift and carry 15 pounds constantly, 20 pounds frequently and 35 pounds occasionally, but only with his right hand. He also found that Plaintiff is unable to perform such tasks with his left hand, and that he cannot do any pushing, pulling, reaching overhead or gross/fine manipulation with his left hand. The ALJ further found that Plaintiff is limited to occasional exposure to humidity/wetness and extreme cold, and occasional driving of automotive equipment. He also determined that Plaintiff is restricted from exposure to unprotected heights. (Tr. 12). The ALJ concluded that Plaintiff's RFC precludes him from performing any of his past work. (Tr. 15). Relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as retail sales, telephone solicitor, and convenience store cashier. Id.

The relevant evidence of record shows that Plaintiff was treated at the emergency room at Vaughan Regional Medical Center on April 26, 2006, following a motor vehicle accident. (Tr. 142). An X-ray of his left wrist showed spiral fractures of the third and fourth

MCs with dorsal[4] displacement (Tr. 149).  An X-ray of his right wrist showed no acute bone or joint abnormality, but a metallic foreign body in the thenar[5] soft tissues (Tr. 153). An X-ray of his right forearm showed a highly questionable fracture of the volar[6] surface of the distal radius[7].  (Tr. 157).  Plaintiff was diagnosed with neck strain, fracture of the left hand and fracture of the right distal radius.  Plaintiff's right wrist and left hand were splinted, he was prescribed Lortab[8] and Flexeril[9], and was released.  (Tr. 146-147).

Plaintiff began treatment with William C. Standeffer, Jr., M.D., on May 1, 2006.  On physical exam, Dr. Standeffer observed that Plaintiff had tenderness on the right wrist, pain on range of motion,

---

[4]Dorsal is relating to the back or posterior of a structure. See www.medterms.com. (Last visited Dec. 13, 2010).

[5]Thenar is the ball of the thumb.  See www.merrium-webster.com. (Last visited Dec. 13, 2010).

[6]Volar is related to the palm of the hand or the sole of the foot. See www.merrium-webster.com. (Last visited Dec. 13, 2010).

[7]Distal radius is that part of the radius closest to the thumb. Radius is the smaller of the two bones in the forearm.  See www.medterms.com. (Last visited Dec. 13, 2010).

[8]Lortab is a combination of acetaminophen and hydrocodone, used to relieve moderate to severe pain.  See http://www.drugs.com/lortab.html. (Last visited Dec. 13, 2010).

[9]Flexeril is a muscle relaxant, used to treat skeletal muscle conditions such as pain or injury.  See http://www.drugs.com/flexeril.html. (Last visited Dec. 13, 2010).

swelling, and a normal neurovascular exam distally.  Examination of his left hand showed obvious fractures of the hand over the MCs and a normal neurovascular exam.  Dr. Standeffer placed Plaintiff's right hand in a cast and scheduled him for surgery, namely open reduction internal fixation (hereinafter "ORIF") of the third and fourth MCs. (Tr. 167).  On May 4, 2006, Dr. Standeffer performed an ORIF of Plaintiff's left third MC fracture, an ORIF of the left fourth metacarpal, and a closed reduction and pinning of the index finger proximal phalanx fracture.  (Tr. 175-176).

Plaintiff returned to Dr. Standeffer on May 15, 2006, for follow-up.  He reported that he was doing well and had no complaints. Dr. Standeffer noted that Plaintiff's wound was well healed, that there was no infection, and that Plaintiff had a normal neurovascular exam distally. Plaintiff was to have his stitches removed, a cast placed on his right, and a splint placed on the left hand. (Tr. 168). Plaintiff was seen by Dr. Standeffer for follow-up on May 26, 2006. On physical exam, Dr. Standeffer noted a well-healed incision and an otherwise normal neurovascular exam distally.  Dr. Standeffer also noted that the pin in Plaintiff's index finger appeared to be migrating further across the fracture, and thus, the screws needed to be removed. (Tr. 169).

During Plaintiff's June 16, 2006 visit, Dr. Standeffer noted that Plaintiff was still having some problems trying to gain his motion, and that on physical exam, tenderness to palpation was noted

around the left wrist and hand. (Tr. 170). Plaintiff underwent surgery of the proximal phalanx of the left index finger with manipulation of the left hand on July 16, 2006. (Tr. 259). On August 7, 2006, Plaintiff reported that he was doing well and had no complaints. (Tr. 253). During a follow-up visit on August 28, 2006, Dr. Standeffer assessed Plaintiff with nonunion proximal phalanx fracture and noted that he had significant limitations and tenderness to palpation. Dr. Standeffer also noted that Plaintiff needed to see a therapist to learn aggressive range of motion and strengthening exercises, and that Plaintiff did not have insurance.

Plaintiff continued to be treated by Dr. Standeffer, and during November 2006, Dr. Standeffer noted that Plaintiff was doing well after two surgeries, and had no real pain; however, he had no improvement in the range of motion in the index finger. According to Dr. Standeffer, Plaintiff was unable to flex his index finger at the MP joint, and complained of tenderness along the proximal phalanx where he could feel the screws. (Tr. 258-259). Due to decreased range of motion in the index finger, Plaintiff was scheduled to undergo a capsular release of the left index finger. (Tr. 258-259).

Plaintiff underwent a capsular release of the left index finger on November 30, 2006. (Tr. 262-263). On December 6, 2006, Plaintiff reported that he was doing well. (Tr. 264). During a follow-up visit with Dr. Standeffer on December 11, 2006, Dr. Standeffer noted that Plaintiff's wound was healing well, there was

no infection, and Plaintiff had a normal neurovascular exam distally. He also noted some mild improvement in Plaintiff's range of motion. (Tr. 265-266).

Plaintiff was seen by Dr. Standeffer on January 8, 2007. Dr. Standeffer noted that Plaintiff had improved range of motion in the index finger, and limited motion at the MP and PIP joints. (Tr. 267).

Plaintiff was last seen by Dr. Standeffer on February 19, 2007. Plaintiff had no new complaints, but felt that notwithstanding his aggressive work on motion and strengthening, he had not had much progress. On exam however, Dr. Standeffer observed that Plaintiff looked like he had had significant improvement in the MP motion of his long, ring, and small fingers, and full range of motion of the middle interphalangeal (hereinafter "MIP") and distal interphalangeal (hereinafter "DIP") joints of the fingers. Dr. Standeffer noted minimal limitation of the MP joint of the index finger and significant limitation of the DIP joint. Dr. Standeffer opined that some of the DIP joint problem was due to the fact that Plaintiff had been unable to do any physical therapy except that which he did on his own. He referred Plaintiff to Dr. Buckley for an opinion about whether further surgical work would be beneficial. (Tr. 268).

Dr. Standeffer completed a Clinical Assessment of Pain form for Plaintiff on November 28, 2007. He opined that Plaintiff's pain

is present to such an extent as to be distracting to adequate performance of daily activities; that physical activity would increase his pain to some extent, but not to such an extent as to prevent adequate functioning of tasks; and that significant side effects may be expected which may limit his effectiveness of work duties or performance of everyday tasks such as driving. He further opined that pain and/or drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattentiveness and drowsiness, and that pain may become less intense or frequent in the future but it would remain a significant element in Plaintiff's life. (Tr. 306-307).

At the referral of Dr. Standeffer, Plaintiff was evaluated by Dr. Buckley on February 27, 2007. Dr. Buckley noted that Plaintiff's index finger had healed, and that there was a slight shortening, slight valgus angulation,[10] and slight rotation. He also noted that Plaintiff could extend fully his index finger, but was only able to flex to 55 degrees actively and 65 degrees passively. (Tr. 269).

Plaintiff was next seen by Dr. Buckley on March 20, 2007. Dr. Buckley noted no appreciable change in Plaintiff's index finger and that the finger was not interfering with the function of the hand. He opined that the likelihood of further improvement postoperatively was not great and that there is "modest potential" for additional

[10]Valgus angulation is turned outward at an abnormal angle. See www.merriam-webster.com. (Last visited Dec. 13, 2010).

flexion. He also noted that that additional flexion would make the problem of rotational alignment more pronounced.  (Tr. 270).

Plaintiff underwent physical therapy at DCH Regional Medical Center six times during 2006. (Tr. 205).  In the Outpatient Therapy Patient History form dated August 28, 2006, Plaintiff listed his medication as Lortab 7.5, and reported his pain as a 5 on a scale of 1 to 10.  (Tr. 180).  In a physical therapy Progress Report dated September 26, 2006, it was noted that Plaintiff reported that his middle, ring and small finger flexing were progressing rapidly, but the progress with his index finger was slower. (Tr. 286). Plaintiff advised on November 13, 2006, that he was discontinuing therapy because he was scheduled to have another surgery on his hand. (Tr. 205).

Following surgery on November 30, 2010, Plaintiff resumed physical therapy and during a December 5, 2006 session, he reported a decrease in pain. (Tr. 230).  During physical therapy sessions on December 18 and 21, 2006, Plaintiff reported pain of 0/10. (Tr. 233-235). Plaintiff was discharged from therapy on February 14, 2007 after three treatments. (Tr. 241).

Plaintiff saw John R. Saxon, M.D., for a consultative evaluation at the request of the Agency on November 15, 2007.  Dr. Saxon reported that Plaintiff's physical exam was normal, except for deformity of his left hand, with mounded-up tissue in the medial portion of the dorsum of his left hand, two long surgical scars overlying the dorsum

of his hand one medial to the left fourth metacarpal bone and one overlying the third metacarpal bone, and some enlargement of his left second PIP joint. He assessed Plaintiff with chronic left hand pain and limitation of motion secondary to prior crush injury. He opined that Plaintiff is disabled to the extent that he does not have significant functional use of his left (non-dominant) hand. (Tr. 299-300).

Dr. Saxon completed a Medical Source Opinion on the same day. He opined that Plaintiff's ability to stand, walk and sit was within normal limits, and that he could lift 15 pounds constantly, 20 pounds frequently and 35 pounds occasionally with his right hand only. He further opined that Plaintiff could constantly handle, finger, feel, and reach overhead with his right hand only, and that he could never climb or work in high, exposed places. He also opined that Plaintiff can occasionally work in extreme cold and, wetness/humidity, that he could occasionally drive automotive equipment, and never work in high exposed places. (Tr. 302-303).

Plaintiff presented two additional documents to the Appeals Council. One document is a "Medical Report for Automobile Insurance" dated September 20, 2007. In the Report, Dr. Buckley states that Plaintiff's medications include Lortab 7.5 and that the medication adversely affects his ability to operate a motor vehicle. (Doc. 30 at 4). The second is a memo from Safeway Insurance Company of Alabama, Inc., which states that Plaintiff's automobile insurance

was cancelled effective September 29, 2007, due to Dr. Buckley's Report.(Doc. 30 at 3). Both documents were made a part of the Court record on February 5, 2010. (Doc. 30).

1.  **Whether the ALJ erred in rejecting the opinion of William Standeffer, Jr., M.D., Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred in according the pain assessment of Dr. Standeffer little weight. Plaintiff argues that the assessment is well-supported by Dr. Standeffer's treatment notes, and is bolstered by the opinion of Dr. Saxon.  Defendant counters that the ALJ provided good cause for discounting the opinions expressed by Dr. Standeffer in the pain assessment as the assessment was presented in a check-box format, was completed 10 months after treatment, and directly contradicts the medical evidence of record.

Case law provides that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  "Good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records.  <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1340-41 (11th Cir. 2004); <u>See also Lewis v. Callahan</u>, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991); <u>Sabo v. Commissioner of Social Security</u>, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); and 20 C.F.R. § 404.1527(d). <u>See also Johnson v. Barnhart</u>, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); <u>Wind v. Barnhart</u>, 2005 WL 1317040, *6 (11th Cir. Jun. 2,

2005) (citing to <u>Crawford v. Comm'r of Social Security</u>, 363 F.3d 1155, 1159 (11th Cir. 2004)) <u>Johnson</u>, 2005 WL 1414406, *2; <u>Wind</u>, 2005 WL 1317040, *6.

In addressing the assessment of Dr.Standeffer, the ALJ found as follows:

> On November 28, 2007, Dr. Standeffer completed a form entitled "Clinical Assessment of Pain." The doctor checked off boxes indicating that Claimant suffered from pain to such an extent that he would be distracted from adequate performance of daily activities, and that his medication would cause severe side effects limiting his work effectiveness. . . .
>
> I give Dr. Standeffer's opinion little evidentiary weight. As noted above, when evaluating a medical opinion, I must follow § 1527(d)(1). I must give even more weight to the opinion of treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. § 1527(d)(2). . . .
>
> Here, Dr. Standeffer's opinion regarding Claimant's RFC is not entitled to controlling weight because it fails to satisfy the requirements of § 1527(d)(2). First, it is presented in a "check-box" format, with no accompanying narrative or explanation of the findings. Second, according to medical evidence of record, when Dr. Standeffer completed the form, he had not seen Claimant for about 10 months. Third, and this is most significant, Dr. Standeffer's opinion regarding Claimant's pain level directly contradicts medical evidence of record. In early 2007, Claimant reported no pain during treatment with Dr. Standeffer . . . ; and in February and March 2007, the last evidence of treatment, he reported no pain during treatment with Dr. Buckley . . . . Dr. Standeffer's opinion regarding side effects of medication is likewise suspect. It is inconsistent with Claimant's own report of no side effects. . . .

(Tr. 13).

Upon a careful review of the record evidence, the undersigned finds that the ALJ correctly rejected the opinions expressed in the pain assessment of Dr.Standeffer, as said opinions are not consistent with his treatment notes. While Dr. Standeffer's treatment notes reflect limited flexibility in Plaintiff's left fingers, particularly the left index finger, there are sparse references to pain. The few pain references included in Dr. Standeffer's treatment notes simply do not support the level of pain reflected in his November 2007 Clinical Assessment of Pain. For example, the record reflects that following Plaintiff's surgery in May 2006, he reported to Dr. Standeffer on May 15, 2006, that he was doing well and had no complaints. (Tr. 168). In June of 2006, while Plaintiff reported having problems with range of motion and having tenderness to palpation around his left wrist and hand, there was no report of pain. (Tr. 170). Later, in November 2006, while Plaintiff reported that he had no real improvement in range of motion, he also reported that he had no real pain either. (Tr. 258). Indeed, during Plaintiff's last visit with Dr. Standeffer in February 2007, which was almost ten months before Dr. Standeffer prepared the pain assessment, Dr. Standeffer noted that Plaintiff had no new complaints. (Tr. 268, 306-307).

Dr. Standeffer's opinion is also inconsistent with the remainder of the treatment records. The physical therapy treatment notes

commencing in August 2006 likewise do not reflect that Plaintiff experiences the level of pain reflected in Dr. Standeffer's assessment. During physical therapy in August 2006, Plaintiff listed Lortab as his medication, and placed his pain at a 5 on a scale of 1 to 10. (Tr. 189, 287). In September 2006, Plaintiff reported a decrease in pain with the use of the splint (Tr. 197).

By November 2006, Plaintiff reported a decrease in pain, and placed his pain at 0 on a scale of 1 to 10. (Tr. 231-233). This record evidence clearly belies Dr. Standeffer's pain assessment.

As for Dr. Standeffer's opinion that Plaintiff's medications cause drowsiness, a review of Dr. Standeffer's treatment notes do not reflect any occasion in which Plaintiff complained of any side effects of his medication. Dr. Standeffer's treatment notes are totally devoid of any notations which suggest that Plaintiff reported any side effects from his medication. It is also noteworthy that Dr. Standeffer's opinion related to medication side effects is contradicted by Plaintiff himself, who reported, in his undated disability report, that he takes Lortab, but does not experience side effects from that medication. (Tr. 106).

In view of the record evidence, the ALJ had good cause for rejecting Dr. Standeffer's pain assessment as the opinions expressed therein are inconsistent with his own treatment notes, as well as the other record evidence. Accordingly, the ALJ's decision to accord little weight to Dr. Standeffer's pain assessment is supported by

substantial evidence.

## 2. Whether the ALJ erred in evaluating Plaintiff's credibility.

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's credibility with respect to his lack of dexterity and his inability to use his left hand and arm. Defendant responds that the ALJ specifically referenced medical evidence regarding Plaintiff's left index finger and found that his limitation resulting from loss of function in his left hand was minimal. Additionally, Defendant argues that the ALJ gave Defendant every benefit of the doubt by taking Plaintiff's finger limitation into account and assessing an RFC that did not include significant use of his left hand.

In determining Plaintiff's credibility, the ALJ stated as follows:

> Claimant clearly overstates the functional limitation in his left hand. The medical evidence clearly shows that his primary limitation is to his left index finger – and it's a minimal limitation: a mere inability to flex it more than 55-65º. (He has full extension.) . . . . In fact, in the last record of treatment, March 2007, Dr. Buckley states, *"[T]he finger is not now interfering particularly with function of the hand . . . ."*. *Id.* Similarly, Claimant's testimony about the side effects of medication (Lortab 7.5) is not credible. As noted above, he has explicitly denied side effects. . . . Moreover, the most current evidence of medical treatment – Dr. Standeffer's treatment in February and March 2007 – indicates that Claimant reported no pain, and neither doctor prescribed pain medication . . . thus leading one to wonder how Claimant he might be able to suffer from side effects [sic] pain medication.

(Tr. 14-15).

Credibility determinations with respect to the subjective testimony are generally reserved to the ALJ. See, e.g., Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987). However, "[i]f the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote, 67 F.3d at 1561-1562; Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See, e.g., Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In the present case, Plaintiff takes issue with the ALJ's discrediting his allegations of lack of dexterity and functional use of his left hand and arm. As set forth above, the ALJ clearly articulated his reasons for discrediting Plaintiff's allegations of such limitations, and specifically pointed to language in Dr. Buckley's treatment notes that support his determination. Specifically, Dr. Buckley's treatment notes reflect that Plaintiff's left index finger is healed, and is slightly shortened, with a slight angulation and slight rotation, that Plaintiff is able to fully extend the finger, and can flex it 55 degrees actively and 65 degrees passively. Dr. Buckley also opined that the finger is not interfering with the function of Plaintiff's hand.(Tr. 269-270).

Likewise, Dr. Standeffer's treatment notes dated January 2007 reflect that Plaintiff had improved range of motion of the index finger. In February 2007, Dr. Standeffer noted minimal limitation of the MP joint of the index finger, and significant limitation of the DIP joint. This record evidence, upon which the ALJ relied, clearly supports his determination that Plaintiff's allegations regarding the functional use of his left hand and arm was not fully credible. Accordingly, the ALJ did not err in his credibility finding.

### 3. <u>Whether the record before this court is incomplete</u>

Plaintiff asserts that the Appeals Council entered into the administrative record two documents which are not before the Court, that the documents are significant, and that Plaintiff should be afforded an opportunity to argue the importance of this evidence once it is made a part of the record. In response, Defendant contends that the two documents have been made a part of the record before the Court. (Docs. 27, 30). The docket reflects that the two documents were made a part of the court record on February 5, 2010 (Doc. 30); thus, any harm resulting from the failure to include these documents in the original transcript is harmless as the omission was remedied. The undersigned further observes that while Plaintiff requested an opportunity to argue the importance of these documents to the issues raised, he has failed to present any such argument, and the Court's review of the documents does not establish any basis for rejecting the ALJ's determination that Plaintiff is not disabled.

## V.  Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability and disability insurance benefits, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this <u>Report and Recommendation</u>.

**DONE** this **14th** day of **December, 2010.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)( c)); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days [11] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.   Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

---

[11]The Court's Local Rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

3.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate
judge finds that the tapes and original records in this action are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript,
is advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost
of the transcript.

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**